**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICKY JACOBS LIFF,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:11-cv-1198-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on January 5, 2007, alleging an onset of disability on December 20, 2003, when he had a heart attack (R. 146), and had continuing problems due to coronary artery and heart disease with stent placement, degenerative disc disease, and dysthymic disorder. R. 73, 75, 112-15, 154. His application was denied initially and

upon reconsideration. R. 80-86. Plaintiff requested a hearing, which was held on February 24, 2010, before Administrative Law Judge Michael Amendola (hereinafter referred to as "ALJ"). R. 29-72. In a decision dated June 9, 2010, the ALJ issued a partially favorable decision, finding Plaintiff became disabled on September 30, 2007, but was not disabled as defined under the Act prior to that time. R. 8-28. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on April 22, 2011. R. 1-3, 6. Plaintiff filed this action for judicial review on July 20, 2011. Doc. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a heart condition, bad back and knees, and depression. R. 73, 75, 146, 164. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered degenerative disc disease (DDD) of the lumbosacral spine; degenerative joint disease (DJD) of the left knee, with surgical repair; coronary artery disease (CAD), with myocardial infarction and stent placement; and chronic obstructive pulmonary disease (COPD), which were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14-16. The ALJ determined that prior to September 30, 2007, the date the ALJ found Plaintiff became disabled, Plaintiff had the residual functional capacity to perform the full range of sedentary work; however, as of September 30, 2007, Plaintiff's RFC was for less than sedentary work. R. 17, 21. Based upon Plaintiff's RFC prior to September 30, 2007, the ALJ determined that he could perform past relevant work as a police chief; however, beginning on September 30, 2007, Plaintiff's RFC has prevented him form being able to perform past relevant work. R. 22. The ALJ found that, Plaintiff having been born on January 31, 1944, he was an individual closely approaching retirement age on September 30, 2007, the established disability onset date, and on January 30, 2009, he attained the age of 65 and became a person of

retirement age. R. 23. The ALJ also found that Plaintiff has a law degree, was a practicing attorney, and is able to communicate in English; thus, he has work skills that are transferable to other occupations within the residual functional capacity the ALJ defined. R. 23. The ALJ found, as of September 30, 2007, considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that he could perform; however, Plaintiff was not disabled prior to September 30, 2007, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. R. 24.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred by determining that Plaintiff had the RFC to perform a full range of sedentary work prior to September 30, 2007, in failing to adequately consider all of Plaintiff's treating physicians' opinions. Second, he claims the ALJ erred in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

### A. RFC

Plaintiff claims that the ALJ should not have found him able to perform a full range of sedentary work prior to September 30, 2007, or should have followed up on the opinion of Dr. Rhodes, his treating physician, if the ALJ found the opinion was ambiguous. The Commissioner argues that the ALJ did not err because he accepted Dr. Rhodes' opinion that Plaintiff became disabled "as of" September 30, 2007. Doc. 24.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the ALJ erred in determining Plaintiff had the RFC to perform a full range of sedentary work from December 20, 2003 (the alleged onset date) through September 30, 2007 - the date the ALJ found Plaintiff to be disabled. The ALJ determined with regard to Plaintiff's RFC:

> In accordance with Social Security Ruling 96-6p, the Administrative Law Judge has considered the opinions expressed by the State agency medical physicians, Dr. Le and Dr. Andriole, with respect to the claimant's residual functional capacity. In February 2008 and April 2009, Dr. Le and Dr. Andriole, respectively, estimated that the claimant could perform light work, and that he could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday (Exhibits 13F and 15F). These opinions, however, are weighed as statements from non-examining expert sources. Greater weight is afforded to the objective medical evidence and to the records of the doctors who had the benefit of actually examining the claimant (20 CFR 404.1527 and SSR 96-6p).
>
> As previously discussed, Dr. Rhodes, in April 2004, noted the claimant's report that he was feeling well, despite having chronic lower back pain and chronic intermittent knee pain, in addition to his CAD and chronic headaches (Exhibit 7F/15). In

-5-

>November 2005, Dr. Rhodes also found the claimant with a normal gait, symmetric reflexes, lungs clear to auscultation, a regular heart rate and rhythm, a nonfocal neurological examination, and no cyanosis, clubbing, or edema of his extremities (Exhibit 7F/6). Further, in March 2006 and March 2007, Dr. Rhodes noted no musculoskeletal abnormalities upon physical examination (Exhibit 7F/2-5). Moreover, in March 2007, Dr. Evans noted the claimant's report that he was generally feeling better, despite having lower back pain radiating to his buttocks. Furthermore, MRI scans of the lumbar spine revealed disc bulges and facet disease at the L4-LS and LS-Sl lumbosacral levels, with only mild central canal stenosis, and no evidence of disc herniation (Exhibit 6F/l- 2,7-8).
>
>Additionally, in September 2007, Dr. Ranganathan found claimant with lungs clear to auscultation and percussion, a regular heart rate and rhythm, a normal unassisted gait, SIS motor strength, as much as 4/5 thigh flexion, preserved gross and fine manipulation, preserved sensations, equal reflexes, only mild tenderness over the lower lumbar spine, only mild tenderness over the joint line of the left knee, only slightly decreased knee flexion bilaterally, and only slightly decreased lumbar forward flexion. Nevertheless, Dr. Ranganathan found the claimant with positive supine straight-leg raise tests bilaterally at 60 degrees (Exhibit 9F).
>
>Thus, the undersigned finds that the State agency physicians, Dr. Le and Dr. Andriole, understated the extent of the claimant's limitations, and that, prior to September 30, 2007, the claimant could perform only sedentary work, but not light work (20 CFR 404.1527 and SSR 96-6p).
>
>\* \* \*
>
>After September 30, 2007, some evidence reflects that the claimant might also be able to perform sedentary work. In July 2008, Dr. Evans found the claimant with only mildly positive straight leg raise tests at 90 degrees bilaterally, despite having marked tenderness over his lower lumbar area (Exhibit 16F). In September 2009, EKGs and dual isotope stress tests also revealed excellent exercise tolerance, a normal left-ventricular ejection fraction of as high as 64 percent, no EKG abnormality, and no ischemia (Exhibit 17F/I-3, 10-12). Additionally, in January 2010, Dr. Rhodes found the claimant with no respiratory or cardiovascular abnormalities upon physical examination (Exhibit 18F/l).
>
>In March 2010, however, *a medical source statement completed by Dr. Rhodes* indicated that the claimant could lift or carry 25 pounds occasionally and 10 pounds frequently, but stand for only 1 hour in an 8-hour workday, and sit for only 2 hours in an 8-hour workday (Exhibit 19F). Thus, the undersigned finds that beginning on September 30, 2007, the claimant had the residual functional capacity to perform only less than the full range of sedentary work.

R. 20-22 (emphasis added). Because the ALJ determined that Plaintiff could perform a full range of

sedentary work prior to September 30, 2007, the ALJ concluded that the Plaintiff was capable of

performing his past relevant work of a police chief; thus, he was not disabled prior to September 30, 2007. R. 22, 24.

In Dr. Rhodes' medical source statement dated March 2, 2010, to which the ALJ referred, the physician opined "Yes" in response to a question: "In your medical opinion, within a reasonable degree of medical certainty, were the above-noted limitations present since at least 9/30/07." R. 368. Dr. Rhodes also opined that Plaintiff could sit for two hours and stand for one hour in an eight-hour workday; he also required "complete freedom to rest frequently and without restriction." R. 368.

Plaintiff contends that the ALJ erred in conflict with the Eleventh Circuit's decision in *Winschel v. Commissioner of Social Security*[1], by misinterpreting the opinion of Dr. Rhodes. R. 367-68. He argues that his treating physician indicates that these limitations "were present since at least September 30, 2007," (R. 367), and the phrase used – "since at least" – could mean these limitations were present *before* September 30, 2007. He argues the ALJ's failure to address the meaning of the phrase, or resolve any ambiguity in the meaning, was error. Doc. 21 at 12. Plaintiff contends the ALJ should have adequately considered the meaning of the statement "at least" or attempted to contact the treating physician to ascertain when the limitations she noted actually became in effect.

Plaintiff also argues that it is extremely difficult to ascertain whether the ALJ's opinion regarding Plaintiff's disability prior to September 30, 2007 is supported by substantial evidence because most of his medical records, primarily from his treating physician, are extremely difficult to read due to illegible handwriting and poor copy quality, at times. R. 250-81, 355-68. He argues that the illegibility of these treatment records warrants a remand for clarification and supplementation. Doc. 21 at 12 (quoting *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990) (remanding and

---

[1] 631 F.3d 1176, 1179 (11th Cir. 2011).

noting, "We doubt that the ALJ could properly decipher all the medical reports any better than we could.").

The Commissioner contends that the ALJ gave appropriate weight to the treatment notes and judgments of Drs. Rhodes, Taussig, Evans, and Kane in determining that Plaintiff retained the RFC to perform a full range of sedentary work activity "on or before" September 29, 2007 in accordance with *Winschel.*

The Commissioner acknowledges Dr. Rhodes' response to the form Physical Capacities Evaluation/Medical Assessment read the limitations were "present *since at least* 9/30/07," but argues that the ALJ did not err since he accepted that Plaintiff became disabled *on* September 30, 2007. Doc. 24 at 7. The Commissioner also argues the ALJ evaluated the contemporaneous medical records for the period from December 2003 to September 29, 2007, and properly found that they supported an RFC for sedentary work, arguing against a finding that Dr. Rhodes treatment records were "illegible" because the ALJ was able to cite to specific treatment notes. The ALJ cited notes from Dr. Rhodes in April 2004 that Plaintiff was feeling well despite his history of myocardial infarction, cardiac catheterization, and stenting, and also noted that in July 2004, November 2005 and March 2006, that Plaintiff's lungs were clear to auscultation and that he had regular heart sounds with no rubs, murmurs or gallops. R. 17 citing R. 254, 258, 263, 264. The Commissioner also points the ALJ's citation of notes from Dr. Rhodes in November 2005 that Plaintiff was doing very well, had a good exercise tolerance, and had experienced no episodes of chest pain in a year. R. 17, 258. The ALJ also considered the contemporaneous treatment records of other treating sources, including Dr. Andrew S. Taussig, Dr. Rory A. Evans, and Dr. Martin S. Kane. R. 17-19. Dr. Rhodes' records were not as clear as typed/dictated treatment notes usually are, in that many of Dr. Rhodes' notes were hand-written and contain medical acronyms, but they were legible enough for the ALJ to read them and for this Court to review them. *See* R. 17, 20.

-8-

The Commissioner also contends that the ALJ properly cited the results of Plaintiff's electrocardiograms (EKGs) and dual isotope studies ordered by Dr. Taussig, Plaintiff's cardiologist, in April 2005, June 2005, and again in August 2007, which revealed excellent exercise tolerance, no EKG abnormality, and no significant ischemia. R. 17 (citing 235, 239-240). The ALJ also noted that in July 2007, Dr. Kane noted Plaintiff had reported that he had no significant chest discomfort. R. 18. Plaintiff did have an episode of chest pain in February 2007, but Dr. Taussig opined that Plaintiff had non-ischemic chest pain, and a normal EKG, and that Plaintiff's chest pain was likely due to an epigastric burning sensation. R. 18 (citing 233-34).

While it is true that Plaintiff had "normal" cardiac studies at certain times in April/June 2005 and August 2007, he had also been hospitalized with chest pain in February 2005. R. 236, 350. He had a heart attack in December 2003 (the alleged onset date) after a stress test in February 2003 which was in normal limits. R. 350. The results of the dual stress test following the February 2005 hospital admission in June 2005 was "probable normal." R. 239. Plaintiff complained to Dr. Taussig of shortness of breath in February 2008, although he did not have chest pain and he was able to exercise on his treadmill with no problem. R. 351. He was hospitalized again in mid-2008 with atypical pain which another doctor opined was "reflux with esophageal spasm," but he was exercising with "no problem." R. 348. He reported to his cardiologist "doing well" without symptoms in March 2009. R. 346.

The ALJ opined that Plaintiff was capable of the full range of sedentary activity prior to September 30, 2007 – "the date the claimant became disabled." R. 17. It appears that the ALJ accepted Dr. Rhodes' opinion – citing her March 2010 medical source statement – in spite of "some evidence reflect[ing] that the claimant might also be able to perform sedentary work" after September 30, 2007. R. 22. However, the ALJ failed to explain why he gave Dr. Rhodes' opinion Plaintiff was limited to less-than-sedentary work after September 30, 2007 greater weight than "some other

evidence" that Plaintiff could perform sedentary work after that time. R. 22. Even more importantly, the ALJ failed to explain why he used September 30, 2007 as the *beginning* date for Plaintiff's disability, when Dr. Rhodes opines that the limitations "were present *since at least* September 30, 2007" and implicitly could have been present prior to that time. R. 367-68. The records cited by the ALJ did not specify September 2007 as a turning point in Plaintiff's condition, or an intensification of any particular cardiac symptoms. Without further explanation from the ALJ explaining why he settled on September 2007 as Plaintiff's onset of disability, or his contact of Plaintiff's treating physician for further explanation based on her own records, the ALJ's decision is not based on substantial evidence.

### B.    Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his statements of his pain and limitations due to his conditions, and in evaluating his credibility; thus, the ALJ's conclusion that the testimony of the Plaintiff is "not fully credible" (R. 20) is not supported by substantial evidence in the record.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ did not refer to the Eleventh Circuit's pain standard, but he did cite to the governing standards for evaluating subjective complaints, the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 17. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, in discussing Plaintiff's RFC, the ALJ stated,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to have caused the alleged symptoms; however, the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the evidence above and the residual functional capacity assessment below.
>
> As to activities of daily living, the claimant, in a form completed in October 2007, stated that he was able to take care of his hygiene, take care of pet dogs, do grocery shopping, manage his money, read, and watch television. (Exhibit 3E). In September 2007, Dr. Ranganathan also noted that the claimant was able to take care of his hygiene, cook, use the dishwasher, take out the garbage, and drive. (Exhibit 9F). In addition, at the hearing, the claimant testified that he was able to take care of his hygiene, wash the dishes, do gardening, drive, and occasionally eat out with his wife.
>
> Thus, the claimant was not debilitated to the point of being unable to independently perform activities of daily living. Also, the claimant's daily activities were not limited to the extent that one would expect from an individual totally disabled by pains or breathing difficulty.

R. 19-20.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons

-11-

must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the ALJ's credibility determination is based on "a stock paragraph" offering no reasoning for finding Plaintiff not to be credible, and the rest of the paragraph merely focuses on daily activities that the claimant performs for a short duration. He argues that participation in everyday activities of short duration, such as housework or fishing, does not disqualify a claimant from disability. Doc. 21 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)).

The Commissioner argues the ALJ did cite the reasons that he found Plaintiff's subjective complaints to be not credible. Doc. 24 (citing R. 17-20). The Commissioner contends that the ALJ properly considered the treatment records of Drs. Rhodes, Taussig, Evans, and Kane and noted that laboratory work-ups and many radiological procedures were negative or showed only slight abnormalities, including lumbar MRIs, EKGs, dual isotope stress tests, and lumbar x-rays, which failed to substantiate Plaintiff's claims of disabling symptoms "prior to September 30, 2007." Doc. 24.

For present purposes, the Court need not determine whether the ALJ's credibility findings are adequate. For the reasons explained above, the ALJ's determination of September 30, 2007 as the date Plaintiff became disabled was not based on substantial evidence. On remand, the ALJ will need evaluate Plaintiff's pain and credibility again in light of the further analysis of the date of commencement. Any credibility findings must be made in accordance with the Eleventh Circuit's standards and the Social Security Regulations.

## IV.  CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES** and

**REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 1, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record